JAMES E. CAREY *vs.* DEXTER B. ALBRO *et al.*

JUNE 14, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ROBERTS, J. This is an action in assumpsit to recover a brokerage fee. The case originated in the district court and upon an appeal therefrom it was tried *de novo* in the superior court before a justice thereof sitting with a jury, which returned a verdict for the plaintiff in the amount of $300. The case is before us on the defendants' bill of exceptions to the denial of their motions for a directed verdict and for a new trial, to the trial justice's refusal to give certain instructions as requested, and to portions of the charge.

The defendants Dexter B. Albro and Clara A. Albro are husband and wife and the defendant Wilfred Albro was their son. Wilfred Albro died during the course of the litigation. His death was suggested on the record and the administratrix of his estate, Lena Albro, was made a party defendant.

It appears from substantially undisputed evidence that defendants Dexter and Clara Albro were the owners of some ten lots of land located on Dexter street in the town of Coventry and that they had given their son Wilfred Albro an option to purchase these lots at a price of $500 each. It further appears that it was Wilfred's practice to build a dwelling house on a lot and thereafter to offer the property for sale. When he had procured a purchaser his father and mother would sign a deed to that particular lot and he would pay them $500 therefor under the option.

Sometime prior to February 1953 Wilfred erected a house on one of the lots identified as lot No. 5, and on February

3, 1953 defendants Dexter and Clara Albro conveyed this lot with the building thereon to Nicholas and Doris D. Petrarca.

The testimony concerning the procurement of Petrarca as a purchaser for the house is in sharp conflict. With regard to his engagement by defendant Wilfred Albro as a broker, plaintiff testified that for some time during 1952 he had had an agreement with Wilfred for the sale of houses at the regular commission of 5 per cent. He further testified that late in that year he talked with Wilfred about the house which is in question here; that after a discussion concerning the asking price and a reduction in the commission, Wilfred offered to pay a flat fee of $300 if he procured a purchaser; that he, plaintiff, accepted this offer; and that thereafter Petrarca approached him and informed him that he was in the market for a house. The plaintiff testified further that he had taken Petrarca to see another house in which he was not interested, and that around December 16, 1952 he showed Petrarca the house owned by Wilfred Albro. According to plaintiff, Petrarca and his wife inspected the house and told him that if they were interested they would let him know. He heard nothing further from them, but in September 1953 he learned that they had purchased the house from defendants.

In his testimony Petrarca contradicted the testimony of plaintiff. In substance he testified that in October 1952 he had been sent to the house in question to see his brother-in-law and that he had then talked with defendant Wilfred principally about the price. He stated that in the middle of November when plaintiff took him to see the house, he informed plaintiff that he had already seen it.

The plaintiff here declared on an express agreement jointly obligating all the defendants as well as declaring against all of them on the common counts as laid in the writ. In view of the character of the declaration, at the conclusion of the trial defendants moved for directed verdicts as to

all the defendants on both the express contract and the common counts. These motions were denied by the trial justice, and defendants' exceptions numbered 1, 2 and 3 were to such denials.

The count setting out the express contract charges a joint obligation to the plaintiff on the part of all three defendants. It is well settled that "where a declaration in assumpsit sets out a joint obligation and proof shows that only a portion of defendants made, or are chargeable with, the contract, there has been a fatal variance." *Beaudette* v. *Cavedon,* 50 R. I. 140, 142. An examination of the record here reveals no evidence which tends to establish that defendants Dexter and Clara Albro had ever done any business with plaintiff or were in any manner obligated to him. Consequently plaintiff's proof does not establish the joint obligation set out in the declaration.

We are of the opinion that defendants' contention concerning a fatal variance is correct. In the circumstances, however, plaintiff could have been permitted to amend his declaration so as to declare against defendant Wilfred Albro alone. Nothing appears in the record to indicate that plaintiff sought to make such an amendment. We could, in an appropriate case, direct that judgment be entered upon the verdict when a proper amendment of this nature has been made. See *Thomas* v. *Newport Oil Corp.,* 85 R. I. 455. Therefore, in view of the possibility of amendment we will not direct a verdict for defendants, and their exceptions to the refusal by the trial court to direct verdicts are overruled.

However, we do not think that in this case the verdict should be sustained either against defendant Wilfred alone on the common counts if the pleadings had been so amended or on the count relating to the express contract against all the defendants jointly. With respect to the question of the implied contract, evidence as to the fair value of the services alleged to have been performed would be essential

to the establishment of such an implied contract. It is true in the instant case that there was evidence of a conversation between plaintiff and Wilfred Albro concerning the price to be asked for a dwelling house and the amount of commission to be paid plaintiff if he effected a sale. However, we do not consider that this testimony constitutes evidence as to the fair value of the services performed. We do not find any facts in the record that would support the finding of an implied contract.

With respect to the express contract, the verdict of the jury was against all the defendants jointly. The jury were instructed as follows: "You cannot return a verdict in favor of the plaintiff against one of the defendants and in favor of the other defendants. You must return a verdict in favor of the plaintiff or in favor of all of the defendants." It is clear, as we have indicated, that there is no evidence in the record to support a verdict against all of the defendants jointly. We therefore hold that the verdict is against the evidence and the weight thereof. Consequently, it was error to deny the motion for a new trial.

In view of our conclusion, it is unnecessary for us to consider the other exceptions.

The defendants' exceptions to the denial of their motions for directed verdicts are overruled, their exceptions to the denial of their motions for a new trial are sustained, and the case is remitted to the superior court for a new trial.

FLYNN, C. J., did not participate in the decision.

*Kirshenbaum & Kirshenbaum, Isidore Kirshenbaum,* for plaintiff.

*Edward M. Botelle,* for defendants.